Peckham, J.
These proceedings for city improvements ought to be upheld, where the court can see that no injustice is done, if it can be done without overruling the law. It seems to me impossible to uphold this assessment.
The resolution and ordinance for said work were first introduced into the board of aldermen June 30th, 1870, adopted by that board August 23d, 1870, introduced into the board of assistant alderman August 25th, 1870, adopted by them August 29th, 1870, approved by the mayor August 30th, 1870.
The Laws of 1870 (vol. 1, p. 369, § 20) declare that no vote shall be taken in either board upon the passage of a resolution or an ordinance (like these) until after they shall have been published at least three days. This is plain and prohibitory. It is, therefore, peremptory that it shall not be done until after such publication. This court has so held.
Where must the publication be made? The statute of 1870, volume 1, page 832, and passed April, 1870, is plain, that “all advertising for the city government hereafter, * * * shall be published in not more than seven daily and six weekly newspapers printed and published in said city, to be designated from time to time by the mayor and comptroller of said city.”
It is not claimed that this provision does not include or embrace the publication of this resolution and ordinance, and it is conceded that it repeals, as it clearly does, the act of 1868, which provided for such publications theretofore.
*529 But the mayor and comptroller, in 1870, designated no papers in which the city advertising should be “ published.” Hence there was no paper in which the advertising could legally be published.
The Hew York Leader was one of the papers designated in 1868, and it appears that- these proceedings were not published in that. It is averred in the petition that they were nowhere published as required by law, and there is no proof that they were published anywhere.
The case, then, stands thus. The resolution was required to be published, before it was passed, in some or all of certain newspapers to he designated by the mayor and comptroller. The resolution was forbidden to be adopted before it should be so published. It was adopted without such publication. It seems to follow that its adoption was void and the assessment made without authority.
But it is said it never could have been intended that the city government should cease all improvements, if the mayor, etc., failed to designate the papers in which the publication should be made. Then why did the legislature say so ?
It has declared, as plainly as language can, that these resolutions, etc., shall not be adopted till published. With equal distinctness it has declared the only way of publication. The true way for the board to do is to obey the law. If the mayor and comptroller do not do their duty and designate, compel them by legal process to do so. They might almost as well say in excuse that their clerk would not do his duty and publish. The mayor and comptroller are a part of the city government, and the legislature probably never presumed that they would refuse to obey the law as to the designation of these newspapers, and that then the city would, proceed with improvements without heeding the law as to publications, because its officers "neglected or refused to execute it.
The legislature had obviously deemed that the interests of property owners required these publications; hence they are ordered. It is idle to say that the publications have been made as required by law, where they have not been published *530 in the particular papers which the law designates. A publication in a specified paper, printed in italics, may operate as a good notice, if the law requires it to be so printed, as, if the lot owner knows where to look for it, and if he cannot read the language himself he may easily find some one who can. But a publication in half of the numerous papers of the city not designated by law for that purpose would practically operate as no notice, because the law not requiring the publication in these, the lot owner would never think of looking there for the notice.
The order of the General Term of the Supreme Court must be reversed and that of the Special Term affirmed, with costs.
All concur, except Church, Oh. J., dissenting, and Grover, J., riot voting.
Ordered accordingly.